UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

FROEDTERT HEALTH INC, et al.,

        Plaintiffs,

v.

        Case No. 21-cv-0713-bhl

FACTORY MUTUAL INSURANCE
COMPANY,

        Defendant.

---

## ORDER GRANTING MOTION TO DISMISS

---

      This is one of many recent cases concerning whether a plaintiff's insurance policy covers claims related to the COVID-19 pandemic. Froedtert Health Inc and its affiliates (collectively "Froedtert") claim that Factory Mutual Insurance Company wrongfully denied coverage for COVID-19-related losses. ECF No. 18. Froedtert also claims the denial was made in bad faith. *Id.* at 28–29. It seeks declaratory relief and both compensatory and punitive damages. *Id.* at 26–29. Factory Mutual has moved to dismiss on 12(b)(6) grounds. For the reasons given below, the Court will grant the motion and dismiss the case.

### FACTUAL BACKGROUND[1]

      In late 2019, the potentially deadly virus known as SARS-CoV-2 (hereinafter referred to as COVID-19, the disease it causes) began spreading around the world, transmitted from person to person via respiratory droplets. ECF No. 18 at 8–17. By March 2020, Wisconsin Governor Tony Evers had declared a public health emergency. *Id.* at 14–15. As a result of the pandemic, Wisconsin healthcare providers faced serious challenges that strained their resources. *Id.* at 16–20.

      Froedtert Health Inc is a parent entity of a Milwaukee-based healthcare network including Froedtert Memorial Lutheran Hospital Inc, Froedtert & The Medical College of Wisconsin Community Physicians Inc, Community Memorial Hospital of Menomonee Falls Inc, St Joseph's

---

[1] The Factual Background is derived from Froedtert's amended complaint, the allegations in which are presumed true for purposes of Factory Mutual's motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007).

Community Hospital of West Bend Inc, Froedtert Surgery Center LLC, Drexel Town Square Surgery Center LLC, Inception Health Services LLC, and West Bend Surgery Center LLC. *Id*. at 1–2, 17.

Since the COVID-19 pandemic began, Froedtert has handled a surge of patients who have tested positive for COVID-19 and has had to adopt new protocols for preventing the spread of the virus and for dealing with staffing issues when employees test positive. *Id.* at 17–20. It has spent millions of dollars on personal protective equipment and other equipment for employee and patient screening, waste disposal, cleaning, and sanitization. *Id.* It has also had to modify its janitorial services, patient check-in procedures, and the layout of its emergency room in order to ensure frequent cleanings and social distancing. *Id.* All told, Froedtert's losses and expenses related to the COVID-19 pandemic total more than $85 million. *Id.* at 19.

Through this lawsuit, Froedtert seeks to recover some of those losses under an "all-risks" property policy (the Policy) that it purchased from Factory Mutual Insurance Company covering the period from July 1, 2019 through July 1, 2020. *Id.* at 5–7. The Policy has liability limits, including applicable sublimits, of $2 billion. *Id.* Two of the Policy's provisions, Communicable Disease Response and Interruption by Communicable Disease, expressly cover costs for harms caused by communicable disease. ECF No. 18-1 at 31, 64–65. Both are triggered when "a location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease[,] and[, as a result,] access to such location is limited, restricted or prohibited [for at least 48 hours] by[] . . . a decision of an Officer of the Insured." ECF No. 18 at 6, 7; ECF No. 18-1 at 31, 64–65.

The Policy also includes several provisions that Froedtert contends extend additional coverage for Froedtert's COVID-19 losses. These provisions fall under the headings: "Expediting Costs," ECF No. 18-1 at 34, "Extra Expense," *id.* at 50–53, "Civil or Military Authority," *id.* at 58, "Contingent Time Element Extended," *id.* at 59, 76, "Ingress/Egress," *id.* at 31, 59–60, and "Logistics Extra Cost," *id.* at 60–61. Each of these provisions expressly covers "physical loss" or "physical damage."[2]

---

[2] *See* ECF No. 18-1 at 34 (Expediting Costs provision covers costs of repair and/or replacement arising out of "physical damage."), 46–50 (Extra Expense provision covers losses resulting from "physical loss or damage."), 58 (Civil or Military Authority provision covers losses from orders resulting from "physical damage."), 59 (Contingent Time Element Extended provision covers "physical loss or damage."), 59–60 (Ingress/Egress provision covers losses when "physical damage" prevents ingress to or egress from property.), 60–61 (Logistics Extra Cost provision covers losses due to disruptions caused by "physical loss or damage.").

The Policy also contains two exclusions potentially relevant to Froedtert's claims. The Policy specifically excludes coverage for "loss of use." *Id.* at 20. It also does not cover "contamination[] and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy." *Id.* at 23. The Policy defines "contamination," in relevant part, as "any condition of property due to the actual or suspected presence of any . . . virus." *Id.* at 75.

On April 9, 2020, Froedtert submitted a claim under the Policy for COVID-19-related losses and expenses. *See* ECF No. 20 at 15. Factory Mutual agreed to accept coverage, but only under the Policy's Communicable Disease Response and Interruption by Communicable Disease provisions. ECF No. 18 at 19–20. Factory Mutual paid Froedtert the $1 million annual aggregate sublimit applicable to these provisions. *Id.*

Unsatisfied with this limited recovery, on June 9, 2021, Froedtert filed its complaint with the Court. ECF No. 1. The complaint was amended two months later. ECF No. 18. On September 2, 2021, Factory Mutual moved to dismiss the Amended Complaint. ECF No. 19.

## LEGAL STANDARD

When deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Roberts*, 817 F.3d at 564 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Roberts*, 817 F.3d at 564–65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ANALYSIS

"When federal courts obtain jurisdiction through diversity of citizenship, they ordinarily apply 'the substantive law of the state in which the district court sits, including choice of law rules.'" *Green Beginnings, LLC v. W. Bend Ins. Co.*, No. 20-CV-1661, 2021 WL 2210116, at *3 (E.D. Wis. May 28, 2021) (citing *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012)), *aff'd sub nom. Green Beginnings, LLC v. W. Bend Mut. Ins. Co.*, No. 21-2186, 2022 WL 1700139 (7th Cir. May 27, 2022)). "When determining 'which jurisdiction's law applies to a contractual dispute,' Wisconsin courts apply 'the law of the jurisdiction with which

the contract has its most significant relationship[.]'" *Green Beginnings*, 2021 WL 2210116, at *3 (citing *State Farm Mut. Auto. Ins. Co. v. Gillette*, 641 N.W.2d 662, 670–71 (Wis. 2002) (citation omitted)). Both parties agree that Wisconsin law governs interpretation of the Policy. *See* ECF No. 20 at 16–17; ECF No. 25 at 12.

Under Wisconsin law, an insurance policy is a contract. *Kemper Indep. Ins. Co. v. Islami*, 959 N.W.2d 912, 917 (Wis. 2021). "The interpretation of an insurance policy is a question of law when no extrinsic evidence is introduced to interpret the wording of the policy." *Frost ex rel. Anderson v. Whitbeck*, 654 N.W.2d 225, 227 (Wis. 2002). The Court's role in interpreting insurance policies is "to effectuate the intent of the contracting parties" and to construe the language "as it would be understood by a reasonable person in the position of the insured." *Estate of Sustache v. Am. Fam. Mut. Ins. Co.*, 751 N.W.2d 845, 850 (Wis. 2008) (internal quotations and citations omitted). Courts "must consider [a] policy as a whole to give reasonable meaning to the entire policy." *1325 N. Van Buren, LLC v. T-3 Grp., Ltd.*, 716 N.W.2d 822, 840 (Wis. 2006) (citing *Berg v. Schultz*, 526 N.W.2d 781, 783 (Wis. Ct. App. 1994)). Courts do not construe policies to cover risks insurers did not contemplate or underwrite and for which they did not receive a premium. *Sustache*, 751 N.W.2d at 850. Any doubts or ambiguities must be resolved against the insurer and in favor of the insured and coverage. *Rural Mut. Ins. Co. v. Welch*, 633 N.W.2d 633, 636 (Wis. Ct. App. 2001). Further, when construing insurance policies, words "'are given their common and ordinary meaning.'" *J.G. v. Wangard*, 753 N.W.2d 475, 482 (Wis. 2008) (quoting *Danbeck v. Am. Fam. Mut. Ins. Co.*, 629 N.W.2d 150, 154 (Wis. 2001)).

Wisconsin uses a three-step analysis to determine whether coverage exists. Courts look first at a policy's initial grant of coverage, then at the exclusions, and, finally, at any exceptions to the exclusions. *Schinner v. Gundrum*, 833 N.W.2d 685, 693 (Wis. 2013) (citing *Sustache*, 751 N.W.2d at 851). If the Court determines that the initial grant of coverage does not cover the asserted claims, it is unnecessary to examine the policy's exclusions and the analysis concludes. *Schinner*, 833 N.W.2d at 693. If the initial grant of coverage covers the claim(s) presented, courts examine the policy's exclusions to determine whether any of them withdraw coverage. *Schinner*, 833 N.W.2d at 693 (citing *Wadzinski v. Auto-Owners Ins. Co.*, 818 N.W.2d 819, 825 (Wis. 2012)). Exclusions are to be narrowly construed against the insurer and ambiguities are to be resolved in favor of coverage. *Smith v. Atl. Mut. Ins. Co.*, 456 N.W.2d 597, 598 (Wis. 1990).

## I. Because COVID-19 Does Not Cause Physical Loss or Damage, Froedtert's Coverage Arguments Fail.

Froedtert asks the Court to declare that it is entitled to coverage under six Policy provisions[3] and notwithstanding any Policy exclusions or conditions precedent. Froedtert also seeks a declaration that the Communicable Disease Response and Interruption by Communicable Disease sublimits do not limit its recovery. ECF No. 18 at 27. Factory Mutual insists Froedtert's request for declaratory relief fails based on the plain language of the Policy. ECF No. 20 at 17–25. The insurer points out that all of the coverage provisions that Froedtert relies upon require a showing of physical loss or damage. *Id.* at 4–5, 17–25. And because Froedtert cannot plausibly allege that microscopic COVID-19 particles actually alter property, Factory Mutual argues, its claims for a declaration in favor of coverage fail as a matter of law and the Amended Complaint must be dismissed. *Id.* at 17–25.

Froedtert contends it has sufficiently stated a claim of physical loss or damage by alleging that COVID-19 droplets, whether located in the air or on surfaces, physically compromise property and turn it into something dangerous. ECF No. 25 at 13–21. This contention runs aground on a recent Wisconsin Supreme Court decision that rejected a substantially identical argument. In *Colectivo Coffee Roasters, Inc. v. Society Insurance Company*, the Supreme Court followed "the overwhelming majority of the other courts that have addressed [this issue]," and concluded that "the presence of COVID-19 does not constitute a physical loss of or damage to property because it does not 'alter the appearance, shape, color, structure, or other material dimension of the property.'" No. 2021AP463, 2022 WL 1758674, at *3 (Wis. June 1, 2022) (citing *Sandy Point Dental PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 693–94 (N.D. Ill. 2020) (collecting cases), *aff'd*, 20 F.4th 327 (7th Cir. 2021)). At the pleading stage, a plaintiff must do more than allege that the presence of COVID-19 caused physical loss or damage. *Id.* at *5.

Froedtert tries to avoid this result by pointing to the Communicable Disease Response provision, which Factory Mutual has admitted offers coverage and which includes prefatory language stating, "This Policy includes the following Additional Coverages for *insured physical loss or damage*." ECF No. 25 at 21–25 (citing ECF No. 18-1 at 25) (emphasis added). Based on this language, Froedtert contends, communicable disease must cause insured physical loss or

---

[3] Froedtert's complaint suggests a seventh provision, *see* ECF No. 18 at 20, 25, but, as Factory Mutual argues, ECF No. 20 at 4, n. 3, this would be a miscount. The seventh identified provision, Time Element Coverage, is a category of provision, not a provision itself. *See* ECF No. 18-1 at 46–51. Froedtert does not dispute this in its opposition brief.

damage under the Policy. *Id.* Froedtert further argues that the Policy's contamination exclusion would be unnecessary if the Policy's core coverage did not extend to communicable disease-related damage and losses. *Id.* at 25–26.

While the Court agrees that parties to an insurance policy could, in theory, agree that communicable disease, or COVID-19 specifically, causes physical loss or damage, the cited prefatory language, without more, does not plausibly suggest the parties have done so here. The Communicable Disease Response provision does not refer to physical loss or damage at all, let alone state that communicable disease causes physical loss or damage. *See* ECF No. 18-1 at 31. And this makes sense—if communicable disease caused physical loss or damage, it would be difficult to reconcile the expansive available coverage with the provision's $1 million sublimit or with the Policy's contamination exclusion. Froedtert's insistence that the contamination exclusion necessarily means that communicable disease causes physical loss or damage is an overstatement at best. As discussed below, even if the Court accepted Froedtert's strained theory, it is undisputed that the Policy expressly *excludes* coverage for contamination. It is not reasonable to interpret the exclusion as having the opposite of its stated intention.

**II.    The Policy Excludes Coverage Even If Froedtert Alleges Physical Loss or Damage.**

Even if Froedtert's coverage theory were not barred by the plain terms of the Policy and the Wisconsin Supreme Court's interpretation of that language, its attempt to secure coverage would be barred by the Policy's contamination exclusion, which expressly includes viruses.[4] ECF No. 18-1 at 23, 75.

Froedtert tries to avoid this result by claiming the exclusion is unenforceable. Froedtert argues the contamination exclusion cannot be squared with the coverage granted by the Communicable Disease Response and Interruption by Communicable Disease provisions, and the resulting ambiguity must be resolved in favor of the insured. ECF No. 25 at 29–32. But in constructing policy coverage, courts are to give reasonable and effective meaning to all terms, *see 1325 N. Van Buren, LLC*, 716 N.W.2d at 840, and to consider whether there are exceptions to any exclusions. *See Schinner*, 833 N.W.2d at 693. The communicable disease provisions are easily reconcilable with the contamination exclusion if they are considered exceptions to that exclusion.

---

[4] The Court does not reach Factory Mutual's argument that the loss-of-use exclusion, ECF No. 18-1 at 20, would similarly bar coverage. *See* ECF No. 20 at 35–36.

Froedtert also argues the contamination exclusion does not apply because of Wisconsin's independent concurrent causation doctrine, ECF No. 25 at 32–35, which provides that "[w]here a policy expressly insures against loss caused by one risk but excludes loss caused by another risk, coverage is extended to a loss caused by the insured risk even though the excluded risk is a contributory cause." *Kraemer Bros., Inc. v. U.S. Fire Ins. Co.*, 278 N.W.2d 857, 863–64 (Wis. 1979). Froedtert contends that an insured risk, the government negligence that failed to prevent the spread of COVID-19, caused its losses, even if an uninsured risk, COVID-19, was a contributory cause. ECF No. 25 at 32–35. But "in order to trigger coverage, '[an] independent concurrent cause must provide the basis for a cause of action in and of itself and must not require the occurrence of the excluded risk to make it actionable.'" *Siebert v. Wisconsin Am. Mut. Ins. Co.*, 797 N.W.2d 484, 492 (Wis. 2011) (citation omitted). Here, government negligence required the presence of COVID-19 to trigger coverage. Government negligence therefore did not independently cause the losses Froedtert cites in its claims.

**III.     Because Froedtert Cannot Plausibly Allege Coverage, Its Claims Must Be Dismissed.**

Given Froedtert's failure to plausibly allege coverage for its COVID-19 losses, the Court will dismiss the Amended Complaint in its entirety. Froedtert's first claim—for declaratory relief—fails under Wisconsin law given the plain terms of the Policy. *See Colectivo*, 2022 WL 1758674, at *3. For the same reasons, Froedtert's second claim—for breach of contract—also fails. *See Brew City Redevelopment Grp., LLC v. The Ferchill Grp.*, 714 N.W.2d 582, 588 (Wis. Ct. App. 2006), *aff'd sub nom. Brew City Redevelopment Grp., LLC v. Ferchill Grp.*, 724 N.W.2d 879 (Wis. 2006) ("A complaint states a claim for breach of contract when it alleges: (1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages.") (internal citation omitted).

Finally, Froedtert's bad-faith-denial-of-coverage claim fails. "[T]o bring a bad faith claim, 'a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.'" *Brethorst v. Allstate Prop. & Cas. Ins. Co.*, 798 N.W.2d 467, 474 (Wis. 2011) (citing *Anderson v. Continental Ins. Co.*, 271 N.W.2d 368, 376 (Wis. 1978)). Given the Wisconsin Supreme Court's decision in *Colectivo* and this Court's application of that ruling to the Factory

Mutual Policy, Froedtert cannot plausibly allege that the insurer lacked a reasonable basis for denying benefits.

## CONCLUSION

For the reasons given above,

**IT IS HEREBY ORDERED** that Factory Mutual's motion to dismiss, ECF No. 19, is **GRANTED**. The case is **DISMISSED**, and the Clerk of Court is directed to enter judgment.

Dated at Milwaukee, Wisconsin on August 9, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge